**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**ULYSSES JOHNSON,**

**Plaintiff,**

**v.** **Case No: 5:26-cv-329-PRL**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

**Defendant.**

---

# ORDER

This cause comes before the Court on the Court's Order to Show Cause (Doc. 15) and Defendant's Response to Order to Show Cause (Doc. 16). The Court previously ordered Defendant State Farm Mutual Automobile Insurance Company to show cause why this action should not be remanded to state court for lack of subject matter jurisdiction due to the insufficiency of the allegations related to the amount in controversy. (Doc. 15). In response, Defendant contends that the amount in controversy requirement has been satisfied and submits a Civil Remedy Notice ("CRN") filed by Plaintiff to the Florida Department of Financial Services on November 5, 2025, Plaintiff's Florida Rule of Civil Procedure 1.280(a)(1) Initial Disclosures filed in state court on March 24, 2026, and Plaintiff's second demand to settle his claims for $100,000 made via email on June 22, 2026 in support. (Doc. 16). For the reasons explained below, this case will be remanded.

## I. Background

This action arises out of injuries Plaintiff sustained from a motor vehicle accident that occurred on September 18, 2024. (*See* Doc. 2). On September 10, 2025, Plaintiff's counsel sent a demand letter to Defendant, requesting the policy limit for uninsured/underinsured motorists ("UIM") of $100,000 to settle Plaintiff's claims. (*See* Doc. 1 at pp. 6, 20-26). The demand letter states that the value of Plaintiff's bodily injuries, impairments, damages, and losses is well in excess of the settlement amount. (*See id*. at p. 26). This value includes an itemization of Plaintiff's past medical bills and expenses totaling $14,467.91, and an estimate of non-economic damages for past and future pain and suffering totaling $2,339,460.00, in which pain and suffering is calculated at $15 per hour for every waking hour. (*See id*. at pp. 24-26).

On March 24, 2026, Plaintiff brought suit against Defendant in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida. (*See* Doc. 2; *see also* Doc. 1-1). Plaintiff's complaint did not allege a specific amount of damages, stating only that the damages exceeded $50,000. (*See* Doc. 2 at ¶ 1). Specifically, Plaintiff claims that:

> [He] suffered bodily injury including a permanent injury to the body as a whole, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, aggravation of an existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and loss of ability to lead and enjoy a normal life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

(*See id*. at ¶ 13).

On May 11, 2026, Defendant removed the action from state court to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). In its notice of removal, Defendant

asserted that removal was proper because the Court has diversity jurisdiction over the action, which is between citizens of different states (i.e., Plaintiff is a citizen of Florida and Defendant is a citizen of Illinois), and the amount in controversy is greater than $75,000 based on the complaint and Plaintiff's pre-suit demand letter dated September 10, 2025. (*See id*. at pp. 1-6).

On June 23, 2026, the Court issued an Order to Show Cause ordering Defendant to show cause why this case should not be remanded to the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 15). On July 7, 2026, Defendant filed a response to the Court's Order to Show Cause, contending that the amount in controversy exceeds $75,000 based on the allegations in the complaint, the potential damages in this case, and Plaintiff's two demands asking for the full policy limits of $100,000. (Doc. 16).

## II. LEGAL STANDARDS

Subject-matter jurisdiction is a threshold issue in any case pending in the United States District Court. Federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *See Univ. of So. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "[A] court must zealously [e]nsure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001) (citations omitted); *see Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever

the possibility that jurisdiction does not exist arises.") (citations omitted). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. *See Univ. of So. Ala.*, 168 F.3d at 410; *Fitzgerald*, 760 F.2d at 1251.

A defendant may remove a civil action from state to federal court, where the basis for the underlying claim must be based upon either federal question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. § 1441(a); *Hawkinson v. State Farm Mut. Auto. Ins. Co.*, 325 F. Supp. 3d 1293, 1296 (M.D. Fla. 2018). Diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). In removal cases, "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *See Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) (citation omitted). Removal statutes, however, must be construed strictly. *See Univ. of So. Ala.,* 168 F.3d at 411. Indeed, the plaintiff is the master of his own claim, and the defendant's removal rights do not stand on equal footing with the plaintiff's right to choose his own forum. *See Burns v. Windsor Ins.*, 31 F.3d 1092, 1095 (11th Cir. 1994). That said, all doubts and uncertainties regarding jurisdiction should be resolved in favor of remand. *See City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (citing *Univ. of So. Ala.,* 168 F.3d at 411); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). Lack of subject matter jurisdiction requires remand to the state court under 28 U.S.C. § 1447(c). *See* 28 U.S.C. § 1447(c).

The sufficiency of the amount in controversy is determined at the time of removal. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citations omitted). Courts generally "accept[] that the amount in controversy has been satisfied when the plaintiff claims a sufficient sum in good faith, absent facts demonstrating to a legal certainty that the claim is

really for less than the jurisdictional amount." *See Meehan v. State Farm Mut. Auto. Ins. Co.*, No. 6:15-cv-490-ORL-22DAB, 2015 WL 13567353, at *1 (M.D. Fla. June 2, 2015) (citing *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)). However, if the plaintiff does not plead a specific amount of damages, as relevant here, the removing defendant bears the burden of proving that federal jurisdiction exists by a preponderance of the evidence and must present facts establishing its right to remove. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208-09 (11th Cir. 2007); *see also Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017).

When it is not "facially apparent" from the complaint that the amount in controversy exceeds the jurisdictional minimum, such as "[w]hen the complaint does not claim a specific amount of damages," the removing defendant must provide additional evidence demonstrating that removal is proper. *See Pretka*, 608 F.3d at 754 (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)); *see also Williams*, 269 F.3d at 1319-20 (explaining that a "conclusory allegation" that the amount in controversy is satisfied, "without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden") (citations omitted). Beyond the face of the complaint, a district court may consider the defendant's notice of removal and other relevant evidence submitted to determine the amount in controversy. *See Williams*, 269 F.3d at 1319; *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87-89 (2014) (noting that in making a determination as to whether the amount in controversy is satisfied, a court may consider the documents that the defendant received from the plaintiff, along with the removal attachments). A court may draw reasonable deductions and inferences from these documents, using "judicial experience and common sense in determining whether the case stated in a complaint meets federal

jurisdictional requirements." *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (internal footnote omitted).

Courts often consider demand letters and settlement offers when determining whether the amount in controversy for diversity jurisdiction has been met. *See Burns*, 31 F.3d at 1094-95. However, demand letters and settlement offers "do not automatically establish the amount in controversy for purposes of diversity jurisdiction." *See Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 3:10-cv-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010) (internal footnote omitted). To sufficiently establish the amount in controversy, a settlement demand must provide an honest or reasonable assessment of damages, with specific information to support a plaintiff's request, rather than simply "reflect [mere] puffing and posturing." *See id*. (citations omitted); *McCormack v. USAA Cas. Ins. Co.*, No. 3:21-cv-43-MMH-JBT, 2021 WL 717538, at *3 (M.D. Fla. Feb. 24, 2021) (providing that where a pre-suit demand letter describes "a reasonable assessment of the value of the claim, then it is more indicative of the true amount in controversy, especially where the letter contains supporting information, such as medical bills or a specific medical diagnosis"; conversely, a demand for a lump sum amount "without the slightest suggestion how in the world the plaintiff[] could support such a figure, is considered nothing more than mere posturing" and is insufficient to establish the amount in controversy requirement) (citations and internal quotation marks omitted).

## III. DISCUSSION

Defendant argues that several pieces of evidence combine to satisfy the jurisdictional threshold for damages—namely, the CRN, two demand letters, the complaint's allegations, and Plaintiff's initial disclosures. (*See* Doc. 16 at p. 6). Upon review, the Court concludes that these documents do not establish that the requisite amount in controversy is met.

Defendant first points to Plaintiff's CRN to show that the amount in controversy requirement is satisfied, as it contains a demand from Plaintiff to settle the case for the full policy limits of $100,000. (*See id*. at pp. 3, 6-7, 11-17). By way of background, "a civil remedy notice is procedural, as it puts the insurance company on notice that a bad faith lawsuit may be forthcoming. In practice, a civil remedy notice often entails negotiation tactics such as a plaintiff offering to settle a case for insurance policy limits before any discovery has been initiated." *See Kuzmiak v. Tractor Supply Co.*, No. 8:26-cv-1478-CEH-CPT, 2026 WL 1815326, at *3 (M.D. Fla. June 24, 2026). Generally, "CRNs are not sufficient evidence of the amount in controversy unless there is also specific information to support the amount demanded in the CRN." *See Joyce v. Hartford Ins. Co. of the Midwest*, No. 2:20-cv-101-FTM-60MRM, 2020 WL 1929462, at *2 (M.D. Fla. Apr. 21, 2020) (citation omitted); *Garrison v. Allstate Prop. & Cas. Ins. Co.*, No. 8:18-cv-271-T-24-AAS, 2018 WL 1167329, at *3 (M.D. Fla. Mar. 6, 2019) (collecting cases in the Middle District of Florida that "conclude[d] that CRNs are not sufficient evidence of the amount in controversy unless there is also specific information to support the amount demanded in the CRN"); *see also Green v. Travelers Indem. Co.*, No. 3:11-cv-922-RBD-TEM, 2011 WL 4947499, at *3 (M.D. Fla. Oct. 18, 2011) ("Civil Remedy Notices say nothing about the amount in controversy. They are [merely] precursors to bad-faith-failure-to-settle claims that may be brought against an insurer in the future."). In fact,

"numerous courts in this district have determined that . . . CRNs are not sufficient evidence to establish the amount in controversy. . . . because it is the value of the claim at issue, not the value of the policy limit, that is considered for purposes of determining the amount in controversy." *See Hughes v. USAA Cas. Ins. Co.*, No. 6:24-cv-1595-JSS-LHP, 2025 WL 1085823, at *3 (M.D. Fla. Mar. 20, 2025) (internal citations and quotation marks omitted).

Here, although Plaintiff's CRN requests $100,000, it lacks any explanation of that figure and does not provide any supporting documentation or otherwise itemize specific, already-incurred costs totaling $100,000. (*See* Doc. 16 at pp. 11-17). Consequently, Plaintiff's conclusory CRN fails to establish that the amount in controversy requirement has been met. *See Garrison*, 2018 WL 1167329, at *3 (finding that the amount in controversy was not met where defendants offered a "bare-bones pre-suit demand letter and conclusory allegation in her CRN" requesting the policy limits); *see also Amerisure Ins. Co. v. Island Crowne Developers, L.C.*, No. 6:10-cv-221-ORL-28DAB, 2010 WL 11626694, at *2 (M.D. Fla. Apr. 28, 2010) ("[A] showing that the policy amount exceeds $75,000 does not in and of itself establish that the amount in controversy requirement has been met because the value of the underlying claim may be for less than the policy limits[.]") (internal citation omitted).

Defendant also relies on Plaintiff's two demand letters, in which he asks for the $100,000 policy limits, and points to a combination of Plaintiff's boilerplate allegations of permanent injury and resulting damages that, according to Defendant, demonstrate that the requisite amount in controversy is met. (*See* Doc. 16 at pp. 2-4, 6-8). In this case, the pre-suit demand letter merely provides sufficient factual support that the medical expenses as of the

date of the demand letter totaled $14,467.91 (*see* Doc. 1 at p. 24),[1] which falls far below the requisite jurisdictional threshold. *See, e.g.*, *Lamb*, 2010 WL 6790539, at *1-2 (finding that plaintiff's pre-suit demand letter did not establish the requisite amount in controversy because plaintiff merely asked the defendant to pay the limit of her insurance policy, but "fail[ed] to explain how [plaintiff] arrived at her damages calculation, and the documents included with the demand letter d[id] not indicate the exact nature of her medical needs or detail specific medical expenses that would support [plaintiff's] demand"); *Bennett v. State Farm Mut. Auto Ins. Co.*, No. 5:18-cv-344-JSM-PRL, 2018 WL 6706320, at *3 (M.D. Fla. Aug. 15, 2018) (determining that plaintiff's demand letters and CRN requesting policy limit of $100,000 was "of little import" when medical expenses totaled less than $30,000 and plaintiff provided no additional information to support her demand, even where she claimed to need surgery). The demand letters here do not provide "specific information to support the [P]laintiff's claim for damages," and thus, do not offer a "reasonable assessment" of the value of Plaintiff's claim. *See Seoanes v. Capital One Bank (USA) N.A.*, No. 6:13-cv-1568-ORL-37GJK, 2013 WL 6283651, at *2 (M.D. Fla. Dec. 4, 2013) (citation omitted).

Beyond the demand letters, Defendant provided Plaintiff's initial disclosures filed in state court on March 24, 2026 (less than two months before this case was removed to this Court), which indicate that Plaintiff's medical expenses have risen slightly to $14,775.37 and that he seeks an unspecified amount of future medical expenses and non-economic damages. (*See* Doc. 16 at pp. 4, 24). While Defendant generally asserts that the "potential damages" in this case show that the amount in controversy exceeds the jurisdictional threshold (*see id*. at

[1] Notably, the second demand made via email on June 22, 2026, does not provide Plaintiff's medical expenses to date. (*See* Doc. 16 at p. 27).

p. 7), Defendant provides no concrete information, documentation, or estimates of these potential damages. Nor does Defendant provide any sufficient details about Plaintiff's future medical expenses, pain and suffering, or other unspecified damages he has allegedly experienced for the Court to rely on.[2] *See Parnham v. Osmond*, No. 8:19-cv-592-T-60SPF, 2019 WL 3822193, at *3 (M.D. Fla. Aug. 15, 2019) (finding that "the unsubstantiated cost of [any] hypothetical future medical expenses [would be] too speculative" for the court to rely on in that matter); *Iglinski v. Elec. Ins. Co.*, No. 8:21-cv-1304-VMC-JSS, 2021 WL 2284135, at *2 (M.D. Fla. June 4, 2021) (determining that "the mere possibility of future medical care is too speculative" to establish the amount in controversy by a preponderance of the evidence); *Gillespie v. Auto-Owners Ins. Co.*, No. 8:23-cv-296-CEH-AAS, 2023 WL 2755115, at *4 (M.D. Fla. Apr. 3, 2023) (concluding that without any additional evidence indicating that, for example, plaintiff would require surgery at an estimated cost or that she would need regular medical treatment for the rest of her life with an estimated cost, frequency, and life expectancy, the court "d[id] not find it likely that future medical treatment will significantly add to the amount in controversy"); *Reyes v. Stockhill*, 568 F. Supp. 3d 1288, 1294 (M.D. Fla. 2021) (finding that defendant failed to establish the amount in controversy requirement, explaining that plaintiff's "boilerplate calculation [of pain and suffering] [wa]s not specific to her damages in th[e] case, the demand letter reflect[ed] mere posturing, and the Court w[ould] not rely upon it as proof of the amount in controversy"); *Nelson v. Black & Decker (U.S.), Inc.*, No. 8:16-cv-869-T-24JSS, 2015 WL 12259228, at *3 (M.D. Fla. Aug. 31, 2015) ("[T]he Court will not engage in speculation regarding the value of [plaintiff's] claim for pain and suffering

---

[2] To be sure, Defendant, in fact, "concedes that Plaintiff's medical expenses do not yet exceed $75,000." (*See id*. at p. 7).

[damages].") (citation omitted). As such, the Court cannot engage in "conjecture, speculation, or star gazing" to make up for Defendant's failure to provide specific facts and information on the amount in controversy. *See Pretka*, 608 F.3d at 754 (citation omitted).

In sum, Defendant has not sufficiently established by a preponderance of the evidence that the amount in controversy exceeds $75,000, and thus, remand is warranted. *See Univ. of So. Ala.*, 168 F.3d at 411-12 (recognizing that "removal jurisdiction raises significant federalism concerns," and therefore, doubt as to "jurisdiction should be resolved in favor of remand to state court"); *Candelario v. USAA Cas. Ins. Co.*, No. 6:20-cv-2373-JA-LRH, 2021 WL 406262, at *2 (M.D. Fla. Feb. 5, 2021) ("The high level of uncertainty regarding the amount in controversy must therefore be resolved in favor of remand.") (citing *City of Vestavia Hills*, 676 F.3d at 1313).

## IV. CONCLUSION

Accordingly, based on the foregoing, it is **ORDERED** that:

(1) This case is **REMANDED** to the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida.

(2) The Clerk is **directed** to send a certified copy of this Order to the Clerk of Court for the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida.

(3) The Clerk is **directed** to close the case.

**DONE** and **ORDERED** in Ocala, Florida on July 21, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties